## In re The IT GROUP, INC., et al., Debtors.

**Official Committee of Unsecured Creditors of The IT Group, Inc., et al., On behalf of the Estate of the It Group, Inc., et al., Plaintiff,**

**v.**

**Jointa Galusha, LLC, Waste Recovery Enterprises, LLC, Defendants.**

Bankruptcy No. 02–10118 (MFW).
Adversary Nos. 04–50321(PBL), 04–51011(PBL).

United States Bankruptcy Court, D. Delaware.

June 7, 2005.

---

Gregg M. Galardi, Wilmington, DE, for Debtor.

Mary E. Augustine, The Bayard Firm, Wilmington, DE, for Plaintiff.

## MEMORANDUM OPINION [1]

PAUL B. LINDSEY, Bankruptcy Judge.

The matters before the Court are the Motion of Jointa Galusha, LLC for Summary Judgment and Dismissal of the Preference Complaint Pursuant to Bankruptcy Rule 7056 and the Motion of Waste Recovery Enterprises, LLC for Summary Judgment (hereinafter collectively referred to

---

1. This Opinion will constitute the findings of fact and conclusions of law of the Court, as required by Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052.

as the "Motions"). Both Motions raise identical issues and are therefore addressed together. Based upon the discussion following, the Motions will be granted.

## I. Factual and Procedural Background

The Debtors, The IT Group, Inc., *et al.*, (hereinafter referred to as "Debtors"), each filed their respective petitions under Chapter 11 of the Bankruptcy Code[2] on January 16, 2002. The Debtors and The Shaw Group, Inc. (hereinafter referred to as "Shaw") entered into an Asset Purchase Agreement, whereby Shaw would acquire substantially all of the Debtors' assets and assume certain of the Debtors' liabilities. The transaction was approved by Order of this Court dated April 25, 2002.

The Official Committee of Unsecured Creditors (hereinafter referred to as "Plaintiff") was granted standing and authority by Order dated November 6, 2003 to prosecute the Debtors' avoidance actions arising under Chapter 5 of the Bankruptcy Code.

### A. Jointa Galusha, LLC

The adversary proceeding against Jointa Galusha, LLC (hereinafter referred to as "Jointa Galusha"), was commenced on January 7, 2004, seeking to avoid and recover pursuant to §§ 547(b) and 550 of the Bankruptcy Code, two allegedly preferential transfers totaling $156,852.59. The transfers were made in relation to an agreement entered into by the parties, where Jointa Galusha was hired by The IT Group as a subcontractor to provide fill materials for a remediation project in Queensbury, New York. (Affidavit of John P. Davidson,

at ¶ 4) The IT Group, Inc. was the prime contractor for the project with Hercules Incorporated. (Id., at ¶ 2)

Pursuant to the Order, dated September 30, 2004, Granting the Omnibus Motion to Extend the Time Period for Certain Preference Defendants to File Answers or Responsive Pleadings, Jointa Galusha timely filed its Answer on October 14, 2004, essentially denying the averments contained in the Complaint and asserting certain affirmative defenses.

Jointa Galusha then filed this Motion to Dismiss on January 26, 2005. Briefing on the Motion was completed on February 18, 2005, and hence, the motion is ripe for disposition.[3]

### B. Waste Recovery Enterprises, LLC

The adversary proceeding against Waste Recovery Enterprises, LLC (hereinafter referred to as "Waste Recovery"), was filed on January 10, 2004 seeking recovery and avoidance of one allegedly preferential transfer in the amount of $38,413.00. The payment was made pursuant to a contract where the IT Corporation was the general contractor on a superfund environmental cleanup site in Moira, New York, known as the York Oil Superfund Site. (Waste Recovery's Motion for Summary Judgment, at 2) Waste Recovery was hired as a subcontractor on this project to perform services and provide equipment, including grinding wood debris and stumps, daily rental of the grinder and excavator, and mobilization of the equipment in and out of the work site. (Id.)

Waste Recovery timely filed its Answer to the Complaint on May 27, 2004, and

---

2. 11 U.S.C. §§ 101 *et seq.* Hereinafter, references to statutory provisions by section number alone will be to provisions of the Bankruptcy Code unless otherwise noted.

3. Jointa Galusha requested Oral Argument on its Motion pursuant to D. Del. LR 7.1.4. However, in light of the issues presented and the briefing by the parties, oral argument before the Court is unnecessary in this instance.

admitted that it received the payment but denied that the transfer was an avoidable preference on several grounds.

Waste Recovery's Motion for Summary Judgment was filed on January 17, 2005. Briefing was completed February 17, 2005, also making this matter ripe for disposition.

## II. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and it is a core proceeding under 28 U.S.C. § 157(b)(2), (A), (B), (F) and (O). Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## III. Standard of Review

Jointa Galusha and Waste Recovery (collectively referred to as "Defendants") move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

Rule 56(c), provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). After sufficient proof has been presented to support the motion, the burden shifts to the non-moving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate. *Matsushita,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538. A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. The non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

## IV. Parties Contentions

Defendants both assert that the adversary proceedings against them must be dismissed because Plaintiff cannot establish that it is entitled to avoid and recover certain allegedly preferential transfers made during the preference period to Defendants. In order to be entitled to summary judgment under § 547, Plaintiff must prove by a preponderance of the evidence each element of subsection (b):

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made—
> >
> > > (A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Specifically, Defendants argue that the alleged transfers were not interests of the Debtors and therefore, not property of the Debtors' estate. Defendants cite Article 3A of the New York lien law, Sections 70—79a, which purportedly "creates a statutory trust which requires the funds received by a general contractor for the improvement of real property to be held in trust for the benefit of the subcontractors, architects, engineers, surveys, laborers and materialmen who contributed to the improvement." (Jointa Galusha's Memorandum of Law in Support of Defendant's Motion to Dismiss Preference Complaint Pursuant to Bankruptcy Rule 7056, at 1) Defendants argue that the trust exists to pay all claims of the subcontractors and that Debtors have a beneficial interest in only the remaining proceeds. (Id.) Therefore, the trust funds are not property of Debtors' estate and Plaintiff is not entitled to avoid the transfers as preferential. (Id.)

Plaintiff opposes the Motions contending that Defendants have misinterpreted the New York lien law. Plaintiff argues that the New York lien law requires that Defendants' work or services improve the real property in order for the trust to arise. (Plaintiff's Briefs in Opposition to Defendant's Motion to Dismiss Preference Complaint Pursuant to Bankruptcy Rule 7056, at 7) Plaintiff asserts that it is unclear whether the Defendants' services improved the real property, and that Defendants have failed to demonstrate that its services did, in fact, improve the realty. (Id.) Therefore, Plaintiff urges this Court to deny the Motions because there are genuine issues of material fact still present in these proceedings.

From the parties' briefs, it appears that both sides agree on the relevant facts involved. There is no dispute that Defendants provided services as subcontractors for projects in the state of New York on which Debtors were the prime contractors and that Debtors paid Defendants in connection with those subcontracts. The dispute, therefore, arises only as to the application of the New York lien law in these circumstances.

## V. Discussion

In order for a transfer to be avoidable under § 547(b), the trustee must establish that the transfer is an interest of the debtor in property. Section 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."[4] Thus, property held in trust by the debtor for the benefit of a creditor is not property

4. Section 541 provides in material part:
Property of the estate.
   (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

of the debtor's estate and is not an interest of the debtor in property for purposes of § 547(b). *See,* 5 Collier on Bankruptcy P 541.11 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Therefore, § 541 does not affect various statutory provisions that creates a trust fund for the benefit of a creditor of the debtor. 5 Collier on Bankruptcy P 541.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

■ The New York lien law is one such statute that provides for the creation of a trust which has been recognized under the Bankruptcy Code. It states:

§ 70. Definition of trusts

1. The funds described in this section received by an owner for or in connection with an improvement of real property in this state, including a home improvement loan, or received by a contractor under or in connection with a contract for an improvement of real property, or home improvement, or a contract for a public improvement in this state, or received by a subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property including a home improvement contract or public improvement or made with any subcontractor under any such contract, and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter.

N.Y. Lien Law § 70.

Section 71(2) defines the purpose of the trust as it relates to contractors and subcontractors:

§ 71. Purpose of the trust; "trust claims"; "beneficiaries"

2. The trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property, including home improvement or public improvement and incurred in the performance of his contract or subcontract, as the case may be:

(a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen

N.Y. Lien Law § 71.

■ In this proceeding, it is crucial to note that nowhere in its opposition to the Motions, does Plaintiff assert that the funds transferred to Defendants were not funds subject to the statutory trust. The burden is clearly on Plaintiff to establish that the funds paid to Defendants were not part of the trust assets. *Robert S. Cooper v. Grisofe Electric Corporation (In re Building Dynamics, Inc.),* 134 B.R. 715, 717 (Bkrtcy.W.D.N.Y.1992) Having not addressed this issue, Plaintiff has certainly not refuted it, and therefore, this Court finds that the funds paid to Defendants were in fact part of the trust assets.

■ Hence, according to Plaintiff, the only issue remaining is whether Defendants' services improved the real property under the contracts. However, upon a careful reading of the statute, its legislative history, and the relevant case law interpreting the lien law, it is clear that Defendants' services need not improve the real property in order for the statute to apply.

The plain wording of the statute states that the trust assets are held to pay for the "expenditures arising out of the improvement of real property." N.Y. Lien Law § 71(2). The statute goes on to specifically list the payment of claims for subcontractors, architects, engineers, surveyors, laborers and materialmen as an expenditure that is authorized to be paid out of the trust assets. It is evident by the choice of wording that the New York

legislature did not intend, nor imply, a requirement that the services or materials provided by the subcontractors, improve the real property. The lien law states that the trust assets are used to pay for expenditures *arising out of the improvement*. Had the legislature intended such a requirement as Plaintiff suggests, the legislature most certainly would have included it in the statute by stating that the trust assets shall be held and applied for the expenditures *that improve* the real property. The legislature has not done so.

Furthermore, it is apparent that the New York legislature clearly intended for the statute to be broadly interpreted by using the phrase "the payment of claims" when referring to the specific types of expenditures that trust assets may be used to pay. The statute itself does not in any way qualify the types of claims that subcontractors may have against the trust assets. The legislature said of this provision: "With respect to job claims entitled to share in the owner's trust or the contractor's or subcontractor's trust, the operative statutes enumerate the class of beneficiaries and provide that the trust funds be applied to the claims of these persons 'arising out of the improvement.'" 1959 Report of N.Y. Law Rev. Comm., p. 238; N.Y. Legis. Doc., 1959, No. 65[F], p. 54. It would be unreasonable to narrowly interpret such wording, especially in light of the clear intent of the legislature to protect the interests of subcontractors, architects, engineers, surveyors, laborers and materialmen. Plaintiff's suggested interpretation is strained at best, as it purportedly seeks to interpose a requirement into the New York lien law that is just not there.

The New York courts have frequently addressed the purpose and intent underlying the lien law. The court in *Teman Bros., Inc. v. New York Plumbers' Specialties Co., Inc.* detailed very clearly the policy behind the lien law provisions, stating:

> The general purpose of these provisions is to protect contractors, subcontractors, architects, engineers, surveyors, laborers and materialmen by assuring, or at least by making more certain, that those whose skill, labor and materials create an improvement are in fact paid, or at least equitably compensated, for their skill, labor and materials. The provisions' objective was to see to it that the funds intended for construction of an improvement are in fact used only for that purpose, i.e., that the financing money raised by the owner is actually used for the cost of the improvement, that the money paid or payable to the general contractor is used to pay the subcontractors, professionals, laborers and materialmen he has contracted with and that the money paid or payable to subcontractors is used to pay the said persons he has contracted with. The problem sought to be remedied was the diversion of said moneys to other uses since such diversion had the potential and often actual consequence of leaving one or more of said protected persons partially or wholly unpaid. The device or remedy chosen to attempt to prevent this was the trust, with the funds provided by financing being made trust funds in the hands of the owner, funds paid or payable by the owner to the general contractor being made trust funds in the contractor's hands and funds paid or payable by the contractor to a subcontractor being made trust funds in the subcontractor's hands.

*Teman Bros., Inc.,* 109 Misc.2d 197, 444 N.Y.S.2d 337 (Sup., 1981). *Teman Bros.* plainly states that the statute has afforded broad protection to those who have contributed materials, labor, and services on a

project and seeks to make sure that those contributions are compensated.

The New York Court of Appeals in *Aquilino v. United States* reiterates this conclusion:

> The policy proclaimed by our statute is to protect those whose skill, labor and materials made possible the performance of a construction contract and who in fact, creating the improvement, actually gave rise to the owner's obligation to pay. The Legislature sought to assure that the funds received from an owner should "reach [their] ultimate destination—material and labor". (See 1942 Report of N.Y. Law Rev. Comm., pp. 298–300; N.Y. Legis. Doc., 1942, No. 65[H], pp. 28–30.)

*Aquilino v. United States*, 10 N.Y.2d 271, 278—279, 219 N.Y.S.2d 254, 176 N.E.2d 826 (N.Y., 1961).

Additionally, New York courts have previously addressed the New York lien law in relation to preferences and have not read a requirement that the materials, services, or labor improve the real property into the statute. For instance, in *Robert S. Cooper v. Grisofe Electric Corporation (In re Building Dynamics, Inc.)*, 134 B.R. 715 (Bkrtcy.W.D.N.Y.1992), the court held that the trustee of a bankrupt contractor may not recover as a preference monies paid to a subcontractor, the beneficiary of a statutory trust, under the New York Lien Law. The defendant, Grisofe Electric Corporation, was a subcontractor on a project where it furnished electrical work, services, and materials. The defendant was ultimately paid for its work on the project after it sued in state court to recover the monies owed. The debtor, Building Dynamics, Inc., then filed a Chapter 7 petition and sued the defendant for those amounts as an allegedly preferential transfer. The court relying on *In re Casco Electric Corp.*, likewise deferred to the public policy considerations behind the New York lien law:

> Since the policy behind the New York Lien Law is to impress a trust on the monies received by the contractor and have that trust continue until the claims of all the beneficiaries have been paid, the preference section of the Code should not be applied to payments made to subcontractors within the preference period unless demonstrated by the trustee not to be paid out of monies received from the improvements to which the subcontractors·contributed.

*In re Building Dynamics, Inc.*, 134 B.R. 715, 717 (citing *In re Casco Electric Corp.*, 28 B.R. 191, 196 (Bankr.E.D.N.Y., 1983)), aff'd 35 B.R. 731 (D.C.1983). The court made no inquiry into whether the materials or services improved the real property.

## VI. Conclusion

It is clear from the facts and evidence presented here, that Defendants have satisfied the requirements set forth under the New York lien law and have conclusively shown that the transfers were not interests in property of Debtors as required by § 547. This Court finds that Plaintiff has failed to satisfy the burden of proof placed upon it by § 547(g), and that it has not proven the avoidability of the transfers by the preponderance of the evidence under § 547(b).

Defendants are therefore entitled to judgment in their favor and against Plaintiff, the transfers in question herein are held not avoidable pursuant to § 547 and therefore not recoverable by Plaintiff under § 550, and Plaintiff shall take nothing by reason of its complaints herein. Appropriate judgments shall be entered of even date herewith.

### *SUMMARY JUDGMENT*

For the reasons set forth in the Memorandum Opinion of even date herewith, it

is hereby Ordered that the Motion of Waste Recovery Enterprises, LLC for Summary Judgment is **GRANTED**. Defendant is entitled to judgment in its favor and against Plaintiff, and Plaintiff shall take nothing by reason of its complaint.

This adversary proceeding is hereby dismissed.