In re CONTRACTOR TECHNOLOGY,
LTD., Debtor.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Katy Steel Co., Inc., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Bell Bottom Foundation Company,
Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

FleetCor Technologies Operating
Co., L.L.C., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Sunbelt Works, Inc., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Century Asphalt Materials,
L.L.C., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Oldcastle Precast, Inc., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

G–Man Marble & Tile, Inc., Defendant.

Ronald J. Sommers, Chapter
7 Trustee, Plaintiff,

v.

Cipriano Varela, Defendant.

Ronald J. Sommers, Chapter

7 Trustee, Plaintiff,

v.

SBC Communications, Inc., Defendant.

Bankruptcy No. 05–37623.
Adversary Nos. 05–3801, 05–3802, 05–
3806, 05–3807, 05–3808, 05–3844,
05–3845, 05–3896, 05–3899.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 11, 2006.

574

Gregory R Travis, The Travis Law Firm, Houston, TX, for Debtor.

### AMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

MARVIN ISGUR, Bankruptcy Judge.

Contractor Technology, Ltd. was a construction company that served as general contractor on various public works projects in Texas. In performing its work, Contractor Technology routinely engaged in transactions with subcontractors and materialmen to perform certain services or provide goods. The Defendants in these adversary proceedings each allege that they are either subcontractors or materialmen under Texas law, entitled to the benefits of Texas trust fund statutes and earmarking under Texas law.

#### Summary

Contractor Technology filed a voluntary chapter 11 bankruptcy petition on May 13, 2005. The case was converted to a case under chapter 7 on June 23, 2005. Ronald J. Sommers was appointed chapter 7 Trustee.

Shortly before the May 13, 2005 bankruptcy filing, each of the Defendants received a check that purported to pay a prepetition invoice. After the petition date, the checks were all presented for payment from Contractor Technology's bank account.

The Trustee made a timely demand against each Defendant, alleging that the payment of the checks constituted an avoidable transfer under 11 U.S.C. § 549. When the Defendants failed to pay the Trustee, the Trustee timely commenced these adversary proceedings.

The Trustee seeks to avoid the payments as unauthorized post-petition transfers pursuant to 11 U.S.C. § 549. With one exception, the Trustee is entitled to summary judgment in each of these cases. Because the legal issues in the cases are substantially identical, the Court issues this single memorandum opinion, a copy of which will be issued in each referenced case. Separate judgments will be issued.

The principal issue in this case is whether the Defendants should be allowed to retain funds received by them after the filing of the petition, based on their allegations that the funds were held in trust for them under Texas law. If there is a trust—and an ultimate shortage of funds in the trust to pay all beneficiaries—it would be wholly inequitable for certain trust fund claimants (those who did not receive an unauthorized post-petition funds transfer) to have lost their beneficial interest in the trust funds because the chapter 11 debtor allowed the limited and inadequate funds to leave the estate.

#### Facts

The following table summarizes the specific, undisputed facts that pertain to each case:

| Defendant and Case Number | Date of Check | Date Check Paid from Estate's Bank Account | Amount of Check |
| --- | --- | --- | --- |
| Katy Steel Co. (05–3801) | April 30, 2005 | May 16, 2005 | $ 40,713.96 |
| Bell Bottom Foundation Company (05–3802) | April 30, 2005 | May 16, 2005 | $136,127.57 |
| FleetCor Technologies (05–3806) | May 10, 2005 | May 26, 2005 | $ 11,099.49 |

| | | | |
|---|---|---|---|
| Sunbelt Works (05–3807) | April 30, 2005 | May 16, 2005 | $ 98,072.97 |
| Century Asphalt (05–3808) | (1) April 30, 2005 (2) May 10, 2005 | (1) May 16, 2005 (2) May 19, 2005 | (1) $ 33,454.75 (2) $ 84,104.64 |
| Old Castle Precast (05–3844) | May 10, 2005 | June 1, 2005 | $ 31,073.94 |
| G–Man Marble & Tile (05–3845) | May 10, 2005 | May 16, 2005 | $ 20,793.60 |
| Cipriano Varela (05–3896) | (1) May 24, 2005 (2) May 31, 2005 | (1) May 27, 2005 (2) June 7, 2005 | (1) $102,911.26 (2) $ 48,179.41 |
| SBC Communications (05–3899) | (1) May 10, 2005 (2) May 31, 2005 | (1) June 1, 2005 (2) June 20, 2005 | (1) $ 6,655.78 (2) $ 126.15 |

## Summary Judgment Standard

"A motion for summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir.2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and evidence that it believes demonstrate the absence of a genuine issue of material fact. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.*, 297 F.3d 405, 409 (5th Cir.2002). Upon an adequate showing in a motion for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). The court then views the facts in the light most favorable to the non-moving party. *St. David's Health Care Sys. v. U.S.*, 349 F.3d 232, 234 (5th Cir.2003) (citing *Wyatt*, 297 F.3d at 409).

## Trustee's Motion for Summary Judgment

■ The Trustee argues that all required elements of § 549 are satisfied, with no material facts in dispute. To prevail under § 549, the Trustee must establish that:

1. a transfer occurred;

2. the transfer occurred without court authorization;

3. the transfer occurred after commencement of the case; and

4. the transfer was of estate property.

11 U.S.C. § 549.

Here, no serious disputes exist regarding the first two elements:

● The parties do not dispute that the Debtor issued pre-petition checks that were honored. Consequently, a transfer occurred.

● The parties do not allege that the Court authorized the payment.

Accordingly, the Court will analyze whether the third and fourth elements are satisfied.

### Date of the Transfers

■ Whether the transfers occurred after the commencement of the case is in dispute. The Trustee argues that the transfer occurred when each check was cashed—thus post-petition. The Defendants argue that the transfer occurred when the checks were issued—thus pre-petition. The Trustee cannot prevail on summary judgment unless it is clear that the cashing of a check constitutes a transfer under § 549.

The Supreme Court has stated that " 'a transfer and when it is complete' is a

matter of federal law ... [but] 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (quoting *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 89 L.Ed. 305 (1945) and citing *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Nonetheless, on this issue, state laws are essentially indistinguishable because all states have adopted the Uniform Commercial Code. *Barnhill*, 503 U.S. at 398 n. 5, 112 S.Ct. 1386.

■ In the present context, "transfer" under federal law is defined by Title 11. Section 101(54) defines a "transfer" as:

> Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. § 101(54). In determining the exact meaning of "parting with property" and "interest in property," *Barnhill* directs courts to state law—or the U.C.C. here. *Barnhill*, 503 U.S. at 398, 112 S.Ct. 1386. "Under the U.C.C., a check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand." *Id.* (citing U.C.C. §§ 3–104(1), (2)(b); 2 U.L.A. 224 (1991)). The creditor does not have an interest in the debtor's property until the "moment of honor." *Id.* at 401, 112 S.Ct. 1386. The Trustee is not seeking to avoid any prepetition transfer that may have occurred when the checks were delivered. Accordingly, the issue of whether the delivery of

the checks was a transfer separate from the honoring of the checks is not relevant. The sole issue in these adversary proceedings is whether the honoring of the checks themselves constitutes a transfer.

*Barnhill* considered transfer issues for checks under § 547, but in terms that are equally applicable to § 549 since the court used the definition of a "transfer" under § 101(54).[1] The terms defined in § 101 apply to all sections of Title 11. Thus, the Court finds that *Barnhill* is instructive in interpreting transfers under § 549. Regardless of whether a transfer occurs when a check is issued, a transfer occurs under § 549 when a check is cashed. The Trustee sets forth this logic in his brief, and the Court agrees.

Prior to *Barnhill*, lower courts in some jurisdictions found that the transaction date under § 549 is the date the check is delivered. *See, e.g., Quinn Wholesale, Inc. v. Northen*, 873 F.2d 77, 78 (4th Cir.1989); *Tarver v. Trois Etoiles, Inc.*, 78 B.R. 237, 239 (9th Cir. BAP 1987). However, numerous courts post-*Barnhill* have interpreted *Barnhill* as applicable to § 549. *See, e.g., In re Dybalski*, 316 B.R. 312 (Bankr.S.D.Ind.2004); *In re Williams*, 1997 WL 252649 (Bankr.W.D.Tenn.1997); *In re Rainbow Music, Inc.*, 154 B.R. 559 (Bankr.N.D.Cal.1993). The latter courts agree that *Barnhill* does not simply consider issues specific to § 547 in evaluating § 101(54), but rather applicable to the entire Code. Therefore, *Barnhill* controls this Court's decision in the present cases.

To fully consider the Defendants' arguments, the two independent acts of issuing a check and cashing a check must be considered under § 101(54). A fundamental

---

1. 11 U.S.C. § 101(54) was revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). For purposes relevant here, however, the revision retains the same language as to "disposing of or

parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54) (as revised Oct. 17, 2005). This case was filed before the effective date of BAPCPA, so the pre-revision language controls in any event.

difference exists between the rights of a party receiving an actual transfer of funds (after cashing the check) and the rights held by the recipient of a check (prior to presentment). Each Defendant held a claim against the Debtor before receipt of its check. When each Defendant received its check, it received additional rights with respect to its collection of the account receivable—namely to obtain funds from Contractor Technology's bank. However, each Defendant's right to obtain those funds was circumscribed by future events.

■ Indeed, multiple scenarios could prevent the funds transfer from occurring. Typically, companies freeze their accounts upon filing bankruptcy and start separate accounts for post-petition use. Had Contractor Technology taken that normal step, each Defendant would have been left with a worthless check and its original claim. Even without an intervening bankruptcy, a third party might have obtained a lien against the account by garnishment, or the bank may have correctly or incorrectly refused to honor the check. *Barnhill*, 503 U.S. at 399, 112 S.Ct. 1386. Those instances highlight that funds do not transfer by the mere issuance of a check. The creditor may attempt to cash the check and initiate a funds transfer, but no transfer of money will occur. "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." *Id.* at 398 n. 6, 112 S.Ct. 1386 (citing U.C.C. § 3–409(1), 2A U.L.A. 189 (1991) (internal citations removed)). As such, the check represents an enhanced right that is short of a completed transfer.

As stated above, whether the issuance of a check constitutes a transfer under § 541 is beyond the scope of this opinion. All that must be emphasized here is that the *issuance* of a check and the *cashing* of a check are two separate events. Cashing a check is an independent event that constitutes a transfer of property under § 541. Any other understanding of the events would ignore the significance of actually cashing the check.

Some of the Defendants additionally raise the argument that policy considerations dictate not applying *Barnhill* in a § 549 setting. The Court rejects this argument. First, when Congress has made a policy decision, it is not within this Court's purview to alter Congressional policy. Second, the use of different "transfer dates" for checks amongst the various Code sections would create a wholly unworkable policy. The Defendants propose that the date of a transfer in a § 547 claim should be the date that the check is presented, but that the date of a transfer under § 549 should be the date that the check is delivered to the vendor (the "delivery rule").

A simple example shows Congress' wisdom in utilizing the same date under both §§ 547 and 549. Assume that the transfer to a Defendant was a preferential transfer. Under the Defendants' logic, there can be no liability under § 547 because there was no transfer made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). Because a showing under § 547(b)(4) is required to have a recovery under § 547, there can be no preference recovery if the transfer occurs after the petition date. However, using Defendants' policy, there can also be no § 549 recovery (because there was no post-petition transfer). Thus, a vendor could arrange to receive a protected transfer by merely holding the check, with an agreement by the Debtor that sufficient funds would be left in the bank account after the filing of the petition. Such a result would be wholly unworkable. In short, the Court rejects any review of Con-

gressionally-adopted policy on transfer dates under §§ 547 and 549.

Finally, this Court will utilize the transfer date arguments under the precedent Judge Atlas sets forth in *Continental Mfg. Co., Ltd. v. Sommers,* No. H–06–0333, 2006 WL 1118039, *2 (S.D.Tex. April 26, 2006)("the date of honor rule applies to § 549 avoidance proceedings and, therefore, the date the check is honored by the bank governs"). Although her opinion is unpublished, Judge Atlas gives a thorough review of *Barnhill* under a § 549 adversary proceeding (a separate adversary also arising out of the Contractor Technology bankruptcy). *Continental Manufacturing Company* is highly persuasive as further support that §§ 547 and 549 consider the cashing of a check (or date of honor) to be a transfer under § 101(54).

Consequently, as it is undisputed that the Defendants' checks were not honored until after the petition date, the funds transfer occurred after the commencement of the Debtor's case. The third element of § 549 is therefore satisfied.

**Transfer of Estate Property**

 This issue is the core of the dispute and rests on both Title 11 and the Texas Property Code. Under Texas law, certain funds paid to a contractor or subcontractor for a construction project are held in trust for the benefit of certain workers. The Defendants argue that the funds paid to the Debtor were held in trust for their benefit under the statutory trust established by Texas law. Texas Property Code § 162.001 states, in relevant part:

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific property in this state.

TEX. PROP.CODE § 162.001(a). Section 162.003 governs beneficiaries of such a trust and states, in relevant part:

An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

TEX. PROP.CODE § 162.003. The Defendants argue that they are beneficiaries within the meaning of § 162.003—rendering the funds paid to the Defendants "construction trust funds." The minimal relevant case law by other bankruptcy courts in this state supports the Defendants' contention. *See, e.g., In re HLW Enters. of Tex., Inc.,* 157 B.R. 592 (Bankr.W.D.Tex.1993); *see also In re It Group, Inc.,* 326 B.R. 270 (Bankr.D.Del.2005)(considering the issue under New York law with respect to 11 U.S.C. § 547). The Trustee disputes the existence of the trust. The Court finds that resolution of that issue is not required at this time. What must be decided here is whether funds held in the alleged trust were property of the estate on the date of their transfer. The Court finds that they were.

The Defendants ask the Court to rely on a series of cases decided under § 547 of the Bankruptcy Code that hold that a transfer of a trust fund during the preferential transfer period is not a recoverable transfer. The Defendants cite cases where courts considered property held in statutory trust—just as the money was allegedly held here in statutory trusts pursuant to Texas law. Those courts held that if a debtor lacks a beneficial interest in the funds held in trust, then a transfer of such funds would not be a transfer of "an interest of the debtor in property." Because a debtor has no beneficial interest

in trust funds, the cases hold that a transfer of funds held in trust are not recoverable under § 547. Some Defendants also argue that § 541(d) excludes trust funds[2] from the general definition of estate property contained in § 541(a). The Court rejects both arguments.

Sections 549 and 547 use different terminology. Section 547 uses the phrase "an interest of the debtor in property." The Code does not define what is meant by that phrase. Cases not allowing recovery in trust fund preferential transfers look to state law and determine that the debtor had no interest in the transferred property. The Supreme Court described the test under § 547 as follows:

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate-*the property available for distribution to creditors*—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. (emphasis added).

*Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

*Begier* holds that the purpose of § 547 is to return to the estate "property available for distribution to creditors." *Id.* Indeed, *Begier* imposes a judicially-created "reasonable assumption" that "any voluntary pre-petition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property." *Id.* at 67, 110 S.Ct. 2258. If the funds are trust funds,

returning the property to the estate does not further the policy of increasing the property available for distribution to creditors.

As set forth above, the Supreme Court referenced the definition of "property of the estate" in § 541 for determining the contours of "property of the debtor" under § 547. However, the Court did not address the issue of a post-petition transfer of legal title rather than beneficial ownership. Indeed, the text of the Court's opinion focuses on beneficial rights to the funds. The Court's use of § 541 to define the contours of a § 547 claim is tempered by its explanation of the equitable standards applied. The Fifth Circuit has repeatedly applied the *Begier* standard in dealing with § 547 transfers.

> The primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment. Conversely, if funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes. A common example is when a debtor holds funds in trust for another.

*In re Maple Mtg., Inc.*, 81 F.3d 592 (5th Cir.1996); *see also In re Southmark Corp.*, 49 F.3d 1111, 1117 (5th Cir.1995).

There is no such presumption for a post-petition transfer. The statutes differ and the policies to be vindicated differ. Section 549 does not refer to "an interest of the debtor in property"—the phrase that is the linchpin of all trust fund cases under § 547. Instead, § 549 refers to "a trans-

---

**2.** A separate argument is made that the funds are "earmarked." This opinion does not address the merits of whether the funds are trust funds, earmarked, or freely useable by the Estate. Instead, this opinion holds that all legal rights to the funds passed to the estate upon the commencement of the case. Whether the funds are properly characterized as being subject to a trust or earmarked is irrelevant under § 549.

*fer of property of the estate.*" The bankruptcy estate is not created until a case is commenced. "The commencement of a case under section 301, 302, or 303 of this title creates an estate." 11 U.S.C. § 541(a). Therefore, § 547 cases could not have dealt with a transfer of estate property because no estate existed as of the date of transfer in those cases.

While "an interest of the debtor in property" (the § 547 term) is not defined in the Bankruptcy Code, "property of the estate" is defined. The relevant portion of § 541(a) reads as follows:

Such estate is comprised of all of the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541(a)(1).

To apply the § 547 cases to a § 549 recovery would require the Court to omit the word "legal" from § 541(a)(1) and focus all significance only on equitable interests of the debtor. The meaning of § 541(a)(1) is plain in directing the Court to consider both legal and equitable interest, and the Court is bound to respect a statute's plain meaning. *United States v. Ron Pair*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters").

Regardless of whether there was a trust impressed on the money at issue, the estate obtained legal title to the money on the petition date as the money was in the estate's bank account. The estate, acting through the debtor-in-possession, could have stopped the checks issued to the Defendants or spent the money (even improperly) before the Defendants presented the checks. Indeed, such practices are routine in chapter 11 bankruptcy cases. There is little doubt that the estate had legal title.

With respect to the argument that § 541(d) excludes trust funds from property of the estate, the Defendants attempt to read too much into both the statute and the cases decided under that subsection. The cases cited by the Defendants only stand for the unremarkable proposition that the estate does not become the true owner of funds held in trust upon the filing of a bankruptcy case. *See In re LAN Tamers, Inc.*, 329 F.3d 204 (1st Cir.2003); *In re Edison Bros., Inc.*, 243 B.R. 231 (Bankr.D.Del.2000). In both cases, the issue before the Court was whether the debtor had the right to use the funds at issue for its own purposes rather than for the purposes of the ostensible trusts. In both cases, the Court applied § 541(d) to hold that the filing of the bankruptcy case did not give the estate any property rights in the funds.

Those are not the issues in this case. A more careful reading of § 541(d) provides the answer:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, ***becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property,*** but not to the extent of any equitable interest in such property that the debtor does not hold. (emphasis added).

11 U.S.C. § 541(d). The plain language of § 541(d) provides that the debtor retains legal title—and that the legal title to the

property (but not the equitable title) does become property of the estate. In the cases before the Court, the estate was divested of both legal and equitable title only when the checks were honored. Indeed, the First Circuit has explicitly rejected the interpretation of its *LAN Tamers* decision which is offered by certain defendants and held that—notwithstanding the language in *LAN Tamers*—legal title does pass to the estate. *In re Colarusso*, 382 F.3d 51, 59 n. 6 (1st Cir.2004).

The interplay between §§ 541(a) and (d) was explained by the Third Circuit as follows:

> The filing of a bankruptcy petition creates an estate in bankruptcy. This estate, pursuant to section 541(a)(1) of the Code, contains "all legal or equitable interests of the debtor in property as of the commencement of the case." *Section 541(a)(1) is thus broad enough to capture into the estate funds that are to be held as trust funds by the debtor in possession.* However, section 541(d) clarifies that property in which the debtor holds only legal title, and does not hold an equitable interest, such as trust funds, is included in the bankrupt's estate only to the extent of the debtor's legal title to the property and not to the extent of any interest in the property that the debtor does not hold: It is a basic tenet of trust law that the trustee has a legal interest in the property he holds, which requires its inclusion under § 541(a). However, the Bankruptcy Code does not overlook the outstanding beneficial interests. *According to § 541(d) the property comes into the estate subject to those interests. (Emphasis added).*

*Universal Bonding Ins. Co. v. Gittens and Sprinkle Enter., Inc.,* 960 F.2d 366, 371 (3rd Cir.1992).

The Third Circuit also explained how a holder of an equitable interest can claim its equitable rights. "[The] bankrupt estate may retain legal title over the trust, but the beneficiaries of the trust, (namely, the laborers, materialmen and the surety after satisfying the claims of laborers and materialmen), *may reclaim their equitable interests in the trust fund so created through bankruptcy court proceedings." Id.* at 372.

The existence of the ostensible trust may or may not be established at trial. However, the existence of a trust does not control the Court's decision. Assuming that a trust existed, the Debtor nonetheless had legal title to the funds as of the petition date—and § 541(d) renders such legal title property of the estate.

The situation is analogous to the exemption dispute addressed by the Supreme Court in *Owen,* in which the Court explained that:

> No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house—if, for example, the house is subject to a purchase-money mortgage for its full value—then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder.

*Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The result in *Owen* was striking. The Court allowed the Debtor to utilize his *legal* title to the property to retain possession of an exempt homestead and to exercise that legal right to attempt to avoid a beneficial interest claimed by a judicial lien creditor.

The Fifth Circuit has also addressed this issue, although not in the context of a § 549 cause of action. In explaining how to apply the cleavage between legal and equitable title to trust funds, the Fifth Circuit adopted the Third Circuit's decision in *Universal Bonding* : "[The] bankruptcy estate may retain legal title over the trust, but the beneficiaries of the trust ... may reclaim their equitable interests in the trust fund so created through bankruptcy court proceedings." *In re Al Copeland Enter., Inc.,* 991 F.2d 233, 235 (5th Cir.1993). Accordingly, this Court is bound to find that the funds at issue must be returned to the estate, without prejudice to the claimants' rights to assert a beneficial interest in the funds.

### Policy Issues

For the purpose of completeness, the Court will explain the apparent differences in the policies that are being vindicated by §§ 547 and 549.

■ The purpose of § 547 is to promote an equitable distribution to creditors. When preference law was enacted into the Bankruptcy Code in 1978, it was for the purpose of avoiding transactions that occurred on the eve of bankruptcy and that "preferentially" benefited a limited number of creditors. Preference recoveries bring funds into an estate that were not part of the estate as of the petition date. The Supreme Court quoted and commented on the relevant legislative history in 1991:

"A preference is a transfer that enables a creditor to receive payment of a great-

er percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is twofold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution." *Id.,* at 177–178, U.S.Code Cong. & Admin. News 1978, pp. 6137, 6138. As this comment demonstrates, the two policies are not entirely independent. On the one hand, any exception for a payment on account of an antecedent debt tends to favor the payee over other creditors and therefore may conflict with the policy of equal treatment. On the other hand, the ordinary course of business exception may benefit all creditors by deterring the "race to the courthouse" and enabling the struggling debtor to continue operating its business.

*Union Bank v. Wolas,* 502 U.S. 151, 160–61, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

Given the equitable nature and purpose of § 547, it is not surprising that a number of Courts have not allowed the avoidance of payments to trust beneficiaries. The Fifth Circuit is in accord with the principal that trust funds and earmarked funds may not be recovered as voidable preferences unless the recovery would enhance the distribution to estate creditors. *Coral Petrol., Inc. v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986). However, like other § 547 preference cases, the issue of legal title—the requirement under § 549— was not present in *Coral Petroleum.*

■ The policies vindicated by § 547 differ from those vindicated by § 549. The principal purpose behind § 549 is to assure that the estate's fiduciary complies with applicable distribution law and Court orders. Creditors of the estate should have confidence that the estate's fiduciaries—from the moment of the order for relief—control the distribution of the estate's assets. COLLIER's describes § 549's purpose as follows:

> Under any chapter, whether a case is voluntary or involuntary, the estate is subject to possible unauthorized postpetition diminution, either as a result of the debtor's transfers or because creditors have seized property of the estate or attempted to perfect liens. The purpose of section 549 is to allow the trustee to avoid those postpetition transfers which deplete the estate while providing limited protection to transferees who deal with the debtor. **Fraud by the debtor and, except with respect to purchasers of real property, good faith on the part of the transferee are irrelevant to the application of this section.**
> [1] Debtor Possession and Use of Property of the Estate after Commencement of Voluntary Case.
> As a matter of law, upon the commencement of a voluntary case, all of the

debtor's property becomes property of the estate. As a practical matter, however, the debtor retains control of the property of the estate for a period of time.

> In the usual voluntary chapter 11, 12 or 13 case the debtor retains and is authorized to use the property of the estate in the ordinary course of business, either as a debtor in possession or as a chapter 13 debtor. In a typical voluntary chapter 7 case, a debtor remains in possession of its property after the commencement of the case until a trustee or an interim trustee is appointed and qualifies. Once a trustee is appointed and qualifies, the debtor must turn over to the trustee property not claimed as exempt that the trustee can liquidate for creditors. During the period of its control the debtor or debtor in possession may dispose of property, for example by using it to pay prepetition debts or by transferring it for less than equivalent value, however improper that may be.
> [2] Gap Period after Commencement of Involuntary Case and Before Entry of Order for Relief.
> After the commencement of an involuntary case a "gap period" exists before the entry of an order for relief. During that "gap period," while the debtor continues to use its property and operate its business, significant transfers may take place that deplete the estate.

5 COLLIER ON BANKRUPTCY ¶ 549.02 (15th ed. rev.2006). Congress has established various exceptions to § 549. Those exceptions are codified in § 549(b) and § 549(c). None of the exceptions are applicable here.

The policy reasons behind § 549 are fully vindicated by the trustee's attempt to recover the funds in this case. Although the final tally is not yet in, it appears likely that there will be more claims by trust beneficiaries than there are trust funds to

distribute.[3] If there is an ultimate shortage of funds, it would be wholly inequitable for certain trust fund claimants to have lost their beneficial interest in the trust funds because the chapter 11 debtor allowed the limited and inadequate funds to leave the estate and to be paid to other trust fund claimants.

The better policy—and the one that Congress has adopted—is to require that resolution of the beneficiaries' claims be litigated before a single forum to avoid transfers that frustrate the purpose of consolidating dispute resolution, and to assure that claimants have confidence that the assets of the bankruptcy estate will be distributed in accordance with the law.

■ Section 549 mandates the avoidance of unauthorized post-petition transfers of the estate's legal or equitable interests in property. Accordingly, the Court concludes that a transfer by an estate of its legal interest in funds in a bank account is governed by § 549 of the Bankruptcy Code. The final element of § 549 is established in the trustee's favor.

### Issue Unique to Adversary 05–3899

■ SBC Communications alleges that it received the alleged § 549 payments and applied a substantial portion of the payments to post-petition telephone services provided to the estate. It further alleges that these payments were made in the ordinary course of business under § 363. SBC has not filed a cross motion for summary judgment. However, its response raises a disputed fact issue. Summary judgment for the Trustee is denied in adversary 05–3899.

---

3. The Court makes this statement from its familiarity with the bankruptcy case as a whole and makes no finding of fact in this regard. Whether the Court's current percep-

### Defendants' Motions for Summary Judgment

As set forth above, summary judgment must be granted to the Trustee in all of the adversary proceedings other than 05–3899. The Defendants' motions for summary judgment are moot. Even if the transferred funds are trust funds or are earmarked, the Defendants' motions fail for the reasons set forth above.

### Conclusion

Within 15 days of entry of this order, the parties shall submit proposed forms of judgments consistent with this opinion.

tion proves accurate will be a matter to be resolved in the main bankruptcy case. For the purposes of determining the appropriate policy, the Court must presume a shortage.